

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KRISTA D. CLEM,
     JOHN O'SULLIVAN,
11
                     Plaintiffs,              No. CIV S-08-0013 FCD EFB PS
12            vs.

13   TODD RIEBE, et al.,
                                              FINDINGS AND RECOMMENDATIONS
14            Defendants.
                                   /
15

16        Presently pending are two motions to dismiss plaintiffs' first amended pro se civil rights

17   complaint.  Dckt. Nos. 15, 17.  Also pending is plaintiff Clem's August 19, 2009 motion to

18   appoint counsel.  Dckt. No. 44.

19        The motions to dismiss were heard on June 24, 2009.  Plaintiffs Krista Clem and John

20   O'Sullivan appeared and represented themselves.[1]  John A. Whitesides appeared on behalf of the

21   "Amador County defendants" (defendants Amador County, Amador County District Attorney's

22   Office, Amador County District Attorney Todd Riebe, Amador County District Deputy Attorney

23   ////

24   ////

25   <span>_____</span>

26        [1] This fee-paid case is before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

                                         1

Melinda Aiello and Amador County Animal Control Director John Vail).[2] Dckt. No. 17.

Franklin G. Gumpert appeared on behalf of the "El Dorado County defendants" (defendants El Dorado County, El Dorado County District Attorney's Office, El Dorado County District Attorney Vern Pierson and El Dorado County Deputy District Attorney Trish Kelliher).[3] Dckt. No. 15.

For the reasons set forth below, the court recommends that the motions to dismiss be granted and the motion to appoint counsel be denied. The court also notes that plaintiff John O'Sullivan died in August 2009. Therefore, where leave to amend is granted, the effect of O'Sullivan's death on those claims will be discussed below.[4]

BACKGROUND

The First Amended Complaint was filed on February 26, 2009. Dckt. No. 11. The following facts are set forth therein, and in the state court documents that were submitted with the Amador County defendants' Request for Judicial Notice, Dckt. No. 17.[5]

As a threshold matter, the amended complaint fails to conform to the pleading requirements of Federal Rule of Civil Procedure ("Rule") 8. The complaint, 157 pages in length (93 pages, plus exhibits), Dckt. No. 11, purports to assert twenty-two "causes of action." Many of these claims are repetitious or fail to clearly set forth an appropriate cause of action. Some set

---

[2] Plaintiffs have also named Amador County Animal Control as a defendant. However, defendant Amador County Animal Control Director John Vail is the more appropriately named defendant.

[3] The only remaining defendant in the first amended complaint, Beth DiCaprio, has not appeared in this action.

[4] Plaintiff Clem states that O'Sullivan was murdered by Kenneth Zimmerman, who plaintiff names, along with Julie Tweety, in a purported amendment to the first amended complaint. Dckt. Nos. 42, 44.

[5] The court grants the request for judicial notice. The court may consider judicially noticed facts, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders and other papers filed with the court, *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

forth multiple claims within the same "cause of action" while others confusingly cross reference other claims and repeat the same set of facts many times over. There is also confusion as to which defendants the claims are directed against and which plaintiff seeks redress.

At the relevant times in plaintiffs' first amended complaint, plaintiffs Clem and O'Sullivan resided together with their children at O'Sullivan's ranch in Fiddletown, Amador County. On or before January 4, 2006, one of O'Sullivan's horses died. On January 4, 2006, representatives of Amador County Animal Control, in consultation with its director, defendant John Vail, came to the O'Sullivan ranch, seized five emaciated horses, including one pregnant mare and posted a notice of entitlement to a post-seizure hearing. At the request of O'Sullivan, the dead horse was transported to the University of California at Davis, College of Veterinary Medicine ("U.C. Davis") to determine the cause of death. First Amended Complaint ("FAC") at 12-13, 17.

Also on January 4, 2006, O'Sullivan was arrested and taken into custody on a felony charge of making criminal threats against a neighbor. FAC at 13. On January 6, 2006, O'Sullivan was arraigned on this matter in Amador County Superior Court, pursuant to a complaint filed by defendant Amador County Deputy District Attorney Melinda Aiello (Case No. 06CR9571). *Id*. at 13, 19. Plaintiffs maintain that exculpatory evidence then existed (recordings of telephone conversation between O'Sullivan and others) but was never admitted. *Id*. at 13, 17. On January 9, 2006, O'Sullivan was released on bond. *Id*. at 13-14.

On January 18, 2006, a post-seizure hearing was held in Amador County before an administrative law judge ("ALJ") who found that the seizure of the horses was justified, but that there was no evidence of criminal neglect. *Id*. at 14. Director Vail was present at the hearing. The ALJ ordered that the horses be made available to O'Sullivan's veterinarian who, in consultation with the veterinarian for Animal Control, would decide when the horses were fit to be returned to O'Sullivan. *Id*. at 14, 18. O'Sullivan acknowledged ownership of and responsibility for the horses, and asked for an accounting and opportunity to pay the charges to

date. *Id*. at 18. Plaintiffs allege that to date, plaintiffs and plaintiffs' veterinarian have been denied access to the horses. *Id*. at 15.

On January 20, 2006, both plaintiffs were arraigned on a criminal complaint for felony animal cruelty (Case No. 06CR9662), filed by defendant Amador County District Attorney Todd Riebe and defendant Deputy District Attorney Aiello. *Id*. at 20. At the arraignment, Clem stated that she did not own the horses (although she maintains that she had, and continues to have, an ownership interest in the foal). *Id*. Both plaintiffs were released on their own recognizance. *Id*.

Also on January 20, 2006, a preliminary hearing was held in Case No. 06CR9571 (criminal threats), wherein probable cause was found to hold O'Sullivan for trial on a felony charge of violating California Penal Code ("Penal Code") section 422, for making criminal threats of bodily injury against an individual who reported O'Sullivan to the Animal Control authorities. Dckt No. 17, Ex. 1, 2. On March 24, 2006, Deputy District Attorney Aiello requested that the criminal threats case be dismissed and the court dismissed the case. FAC at 20.

U.C. Davis released necropsy reports on O'Sullivan's dead horse in January 2006 (preliminary report) and February 2006 (final report), showing a potentially fatal, but readily treatable, parasitic disease. Plaintiffs contend that this evidence was exculpatory, but defendants did not admit the preliminary report into evidence at the May 2006 preliminary hearing, and withheld the final report until dismissal of charges in March 2007. FAC at 21-22, 43-44.

On May 19, 2006, a preliminary hearing was held in Case No. 06CR09662 (animal cruelty), wherein the judge found probable cause to move the case to trial against both Clem and O'Sullivan. *Id*. at 44, Dckt. No. 17, Ex. 3, 4.

On November 29 or 30, 2006, a second animal cruelty felony complaint was filed against both plaintiffs in Amador County Superior Court (Case No. 06CR11579). *Id*. at 22, 44.

On March 19, 2007, a plea agreement was accepted by the Amador County Superior Court in Case No. 06CR9662 (first animal cruelty case), pursuant to which O'Sullivan pled no

contest to two misdemeanor violations of Penal Code section 597.1, and agreed to pay restitution, in exchange for the return of his horses, and the dropping of charges against Clem in Case No. 06CR9662 (first animal cruelty case), and against both Clem and O'Sullivan in Case No. 06CR11579 (second animal cruelty case). *Id*. at 23-24, 44, Dckt. No. 17, Ex. 5, 6.

On March 23, 2007, two horses were returned to O'Sullivan, which he sold on March 25, 2007. FAC at 24. Defendant Vail informed O'Sullivan that the remaining three horses and new foal needed to be quarantined because of recent exposure to a highly contagious bacterial disease. *Id*. at 24, 45-46.

On March 29, 2007, the Amador County District Attorney's Office filed a motion to set aside the plea agreement in Case No. 06CR9662 (first animal cruelty case), on the ground that the return of the horses was barred by statute upon defendant's conviction of Penal Code section 597.1(k). *Id*. at 27.

Meanwhile, on April 6, 2007, plaintiffs learned from a member of the press that U.C. Davis had issued a final necropsy report in February 2006; plaintiffs sought and obtained a faxed copy of the report from U.C. Davis. *Id*. at 26. In late April 2007, plaintiffs obtained an independent review of the report from an expert who opined that O'Sullivan's horse had died from "larval cyathostominosis," which causes "massive rapid weight loss and death." *Id*. at 26-27. Plaintiffs argue that this demonstrates they did not mistreat the horses. *Id*.

On May 15, 2007, in Amador County Superior Court, O'Sullivan's plea was vacated in in Case No. 06CR9662 (first animal cruelty case), and the animal cruelty charges against him reinstated under Penal Code section 597.1 in Case No. 06CR9662 (first animal cruelty case). *Id*. 28-29, Dckt. No. 17, Ex. 7. The Amador County Superior Court held that the plea agreement violated the terms of the statute under which O'Sullivan pled no contest, and was therefore an invalid plea. Dckt. No. 17, Ex. 7. No charges were reinstated against Clem. *Id*.

On March 13, 2008, O'Sullivan pled no contest to a misdemeanor count of violating Penal Code section 597.1 in Case No. 06CR9662 (first animal cruelty case), with the amount of

restitution to be subsequently determined.[6]  Dckt. No. 17, Ex. 8.  The parties concurred at the hearing before this court that a restitution hearing has not yet been scheduled.

The allegations in the complaint against Beth DiCaprio contend that she conspired with the other defendants to take the horses from plaintiffs and used the horses for her own benefit. DiCaprio is associated with the Grace Foundation, a private horse rescue group located in El Dorado County, that had at some point housed the seized horses.[7]  Plaintiffs also contend that DiCaprio pressured the district attorney's office into vacating the first plea agreement and defamed plaintiffs.  FAC at 27, 78.

The complaint sets forth twenty-two federal and state law claims which are addressed below.  Defendants maintain the complaint should be dismissed pursuant to Rules 12(b)(6) and 4(m).

LEGAL STANDARDS

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[6] Based on the pleadings, it is not clear what the final disposition was with respect to O'Sullivan and Case No. 06CR11579 (second animal cruelty case).  It does not appear to have been pending at the time of the filing of the instant complaint.

[7] It is not entirely clear from the pleadings if all the horses have been with the Grace Foundation for the entire duration of the litigation or just a limited time.

defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

PRELIMINARY ISSUES

Service of Process

This case commenced in January 2008, and was beset by service of process issues for nearly a year. Plaintiffs filed the original complaint on January 2, 2008. Dckt. No. 1. On the same day, the court ordered service of process to be completed within one hundred twenty days pursuant to Rule 4(m). Dckt. No. 4. On June 30, 2008, more than two months after the deadline

passed and plaintiffs had failed to effect service of process, the court ordered plaintiffs to show cause why the case should not be dismissed for failure to timely serve process and failure to follow court orders. Dckt. No. 6. Plaintiffs responded and requested additional time and expressed their intent to file an amended complaint. Dckt. No. 7.

On November 25, 2008, the court found that plaintiffs failed to show good cause for the lengthy extension sought and denied the request. Dckt. No. 8. However, mindful of plaintiffs' pro se status, the court granted plaintiffs ten days to complete service as required by Rule 4 and indicated that failure to comply may result in a recommendation that the action be dismissed. *Id.* On December 4, 2008, plaintiffs filed a response indicating they did not receive the court's order until December 1, 2008, because their post office box cannot be accessed on the weekends and requested an additional extension. Dckt. No. 9.

On December 31, 2008, the court issued another order and, again mindful of plaintiffs' pro se status, provided plaintiffs sixty days to file an amended complaint and complete service of process. Dckt. No. 10. Despite this extension, the court reserved for a later determination all legal issues concerning the timing, filing and service of plaintiffs' pleadings. *Id.* However, plaintiffs again failed to fully abide by the court's order. While certain defendants were timely served with the amended complaint, pursuant to the court's order, service was not timely as to defendants Vern Pierson, Trish Kelliher, Melinda Aiello and Beth DiCaprio. Dckt. Nos. 11, 12, 13, 14.

Rule 4(m) requires a district court to grant an extension of time to serve a defendant if the plaintiff shows good cause for the delay in service. *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007); *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). The court must consider whether a plaintiff has shown good cause for the delay in service of process on a case-by-case basis. *In re Sheehan*, 253 F.3d at 512. To justify more time for service of a complaint based on "good cause," a plaintiff may "be required to show that: (a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would

8

be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923 F.2d 754, 755 (9th Cir. 1991) (analyzing Rule 4(j), the predecessor of Rule 4(m).)

Here, plaintiffs failed to demonstrate good cause for an extension of time. Indeed, they failed to provide any information as to whether the defendants in question received actual notice of the lawsuit. Despite several extensions provided by the court, plaintiffs failed to even attempt service until more than one year after the original complaint was filed. While pro se parties are entitled to some lenity, they must at least attempt to comply with the rules and court orders. Plaintiffs in the instant case repeatedly ignored the Federal Rules of Civil Procedure and the court's orders.

While it is arguable that the Amador County defendants and the El Dorado County defendants may have been aware of the complaint due to various state court proceedings, there is no indication that defendant Beth DiCaprio was aware of this action until she was served more than a year after the action was originally filed. Therefore, defendant Beth DiCaprio should be dismissed from this action pursuant to Rule 4(m).[8] The Amador County defendants and the El Dorado County defendants will not be dismissed pursuant to Rule 4(m). Rather, the court addresses below the merits of these defendants' motions to dismiss pursuant to Rule 12(b)(6).

Prosecutorial Immunity

The Amador County District Attorney's Office, El Dorado County District Attorney's Office and the associated district and deputy district attorneys, Todd Riebe, Melinda Aiello, Vern Pierson and Trish Kelliher should be dismissed with prejudice because they are immune from liability. "Prosecutors are absolutely immune from liability under [42 U.S.C.] § 1983 for their conduct insofar as it is 'intimately associated' with the judicial phase of the criminal

---

[8] Regardless, the claims against DiCaprio are meritless. Plaintiffs' accusations that she conspired to keep the horses are baseless, as are the allegations that DiCaprio pressured the district attorney's office to vacate O'Sullivan's plea deal. It is clear that the plea deal was vacated because it was in violation of California law, as found by the state court. Dckt. No. 17, Ex. 7.

process." *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005); *Burns v. Reed*, 500 U.S. 478, 486 (1991). Prosecutors are fully protected by absolute immunity when performing traditional activities related to the initiation and presentation of criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Botello*, 413 F.3d at 976 (it is "well established that a prosecutor has absolute immunity for the decision to prosecute a particular case."). Thus, even claims of malicious prosecution, falsification of evidence, coercion of perjured testimony and concealment of exculpatory evidence will be dismissed on grounds of prosecutorial immunity. *See Stevens v. Rifkin*, 608 F. Supp. 710, 728 (N.D. Cal. 1984). However, this immunity protects prosecutors only when acting in their roles in the initiation and presentation of criminal prosecutions. Thus, in *Ewing v. City of Stockton*, __ F. 3d __, 2009 WL 4641736 (9th Cir. Dec. 9, 2009), the Ninth Circuit emphasized that prosecutors are only entitled to qualified immunity, not absolute immunity, when advising police in an investigation. *Id*. at *12-13.

In the instant case, all allegations against these defendants involve conduct that was solely associated with the judicial phase of the criminal process. The filing of the criminal complaint, the handling of the preliminary hearing, the presentation of witnesses and evidence, the plea agreement and motion to set aside the plea are all well within the scope of the legal proceedings handled by the prosecutors. Therefore, the Amador County District Attorney's Office, the El Dorado County District Attorney's Office, Todd Riebe, Melinda Aiello, Vern Pierson and Trish Kelliher must be dismissed with prejudice.

### *Heck* Doctrine

O'Sullivan seeks damages in several claims for the animal cruelty charges to which he pled no contest. Dckt. No. 17, Ex. 8. The majority of those claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* precludes a § 1983 cause of action for damages challenging a criminal conviction or sentence unless the conviction or sentence has been invalidated, expunged or reversed. *Id*.

////

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (fn. omitted).

A plea of nolo contendere or "no contest" is the equivalent of a conviction for purposes of applying the *Heck* doctrine. *Nuno v. County of San Bernardino*, 58 F. Supp.2d 1127 (C.D. Cal. 1999); *Ove v. Gwinn*, 264 F.3d 817, 823, n.4 (9th Cir. 2001) (Ninth Circuit assumed that a nolo contendre plea was the equivalent of a guilty plea for *Heck* analysis under California law). Therefore, O'Sullivan is barred from proceeding with claims that involve his plea of no contest.

DISCUSSION

Claims One and Two

The first and second claims seek relief pursuant to 42 U.S.C. § 1983, alleging violations of substantive and procedural due process of the Fifth and Fourteenth Amendments. Much of these claims involves accusations that the prosecutors withheld exculpatory information and fabricated the criminal charges. As previously stated, the claims as to the prosecutors are barred, as they relate to the legal proceedings. Plaintiffs also appear to allege a procedural due process violation in the taking of the horses.[9]

"The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "[D]ue

---

[9] Five horses were taken, including one pregnant mare. FAC at 17.

process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

The process accorded plaintiffs is stated in the complaint itself. The horses were seized on January 4, 2006. FAC at 12. On January 18, 2006, a post-seizure hearing was held in Amador County before an ALJ who found that the seizure of the horses was justified, but that there was no evidence of criminal neglect. FAC at 14. O'Sullivan was present at the hearing and read a statement into the record. FAC at 18. Two horses were eventually returned to plaintiffs on March 23, 2007, who sold the horses two days later. FAC at 24. Amador County still has possession of three horses and the foal. FAC at 24. Plaintiffs do not dispute that there was a post-seizure hearing or that they were allowed to be heard. Rather, they appear to be challenging the findings of the ALJ. Due process requires a meaningful opportunity to be heard but it does not guarantee a successful result at the hearing. Plaintiffs' own complaint demonstrates that they were given adequate process but are merely objecting to the ruling. Accordingly, the procedural due process claim must be dismissed.

To the extent plaintiffs wish to challenge the finding of the hearing, any claim is barred by the *Rooker-Feldman* doctrine. *See Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923) (a federal plaintiff who asserts as a legal wrong, an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, is barred by *Rooker-Feldman* because the federal court lacks subject matter jurisdiction.)

Plaintiff Clem contends that she is the owner of the foal that was born while in Amador County's custody, and was denied procedural due process because the seizure necessarily deprived her of the foal. The complaint does not contain sufficient facts to support a procedural process claim on this issue. However, Clem will be given leave to amend the complaint if she can allege specific facts stating a procedural due process claim with regard to the foal that was

////

born while in Amador County's custody.[10]  All other claims associated with claims one and two should be dismissed without leave to amend.

Claim Three

Plaintiffs' third claim alleges violations of 42 U.S.C. § 1985(3) and 18 U.S.C. § 241.  "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States."  *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  "[T]he language requiring intent to deprive equal protection . . .  means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin*, 403 U.S. at 102.

Plaintiffs fail to allege any class based discrimination.  Their complaint does not set forth facts sufficient to support conclusions that defendants engaged in a conspiracy to violate plaintiffs' rights based on their membership in any class.

Plaintiffs' claim under 18 U.S.C. § 241 is equally deficient.  Section 241, which provides a basis for criminal prosecution, does not provide a private right of action and cannot form the basis for a civil suit.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Thus, plaintiffs cannot state a claim under this section.

To the extent that plaintiffs' complaint could be construed as asserting a conspiracy claim pursuant to 42 U.S.C. § 1983, the complaint does not contains sufficient facts.  Such a claim requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'"

---

[10] Defendants argue that per the plea arrangement, plaintiff Clem stated she owned none of the horses that were seized by Amador County; therefore, Clem cannot now claim ownership. Defendants can argue this in a subsequent motion to dismiss, should an amended complaint be filed.  The issue of Clem's ownership interest may be moot due to O'Sullivan's death, if Clem is the proper successor.

*Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steel Workers*, 865 F.2d at 1541).

The amended complaint fails to articulate sufficient facts to support allegations of a conspiracy, relying instead on conclusory statements that a conspiracy existed. Plaintiffs' facts are woefully inadequate and the complaint fails to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Therefore, claim three should be dismissed without leave to amend.

Claim Four

The exact claim being asserted in the fourth "cause of action" is unknown. Give the text of the allegations, the court can only guess. This claim alleges violations of the Fourth, Fifth, Eighth and Fourteenth Amendments and under 18 U.S.C. § 242[11] and generally repeats the allegations found throughout the complaint. Plaintiffs' Fourth Amendment claim will be discussed under claim six and the takings claim is discussed in claim seven. Plaintiff's Eighth Amendment claims are entirely frivolous as plaintiffs set forth no facts that could be construed to involve the Eighth Amendment. Plaintiffs' Fourteenth Amendment and 18 U.S.C. § 242 claims have no relevance to this case and should also be dismissed. Therefore, claim four should be

---

[11] Title 18 U.S.C. § 242 states, in relevant part, that whoever subjects any person, "to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned . . . ."

1  dismissed without leave to amend as redundant in part, and for failure to state a claim.

2  Claim Five

3  This claim alleges a violation of 42 U.S.C. § 14141.  Subsection (a) states in relevant

4  part:

5      It shall be unlawful for any governmental authority, or any agent thereof, or any
        person acting on behalf of a governmental authority, to engage in a pattern or
6      practice of conduct by law enforcement officers or by officials or employees of
        any governmental agency with responsibility for the administration of juvenile
7      justice or the incarceration of juveniles that deprives persons of rights, privileges,
        or immunities secured or protected by the Constitution or laws of the United
8      States.

9  42 U.S.C. § 14141(a).  As this statute clearly applies to those responsible for the incarceration of

10  juveniles, and neither plaintiff is a juvenile, this provision does not apply to this complaint.

11  Claim five must be dismissed without leave to amend.

12  Claim Six

13  Claim six alleges Fourth Amendment violations with respect to O'Sullivan's arrest for

14  the animal cruelty and criminal threat charges.  As previously discussed, all claims related to the

15  animal cruelty charges are barred pursuant to *Heck*.  However, the criminal threat charges were

16  voluntarily dismissed by the prosecution and are not subject to the *Heck* bar.

17  A claim of unreasonable search and seizure may state a § 1983 claim for violation of the

18  Fourth Amendment.  *See Robins v. Harum*, 773 F.2d 1004 (9th Cir. 1985).  Likewise, bad faith,

19  illegal or false arrest claims may be cognizable under § 1983 for violating plaintiffs' Fourth

20  Amendment rights.  *See Pierson v. Ray*, 386 U.S. 547, 555-558 (1967) (arrest without warrant or

21  justification states a § 1983 claim for Fourth Amendment violation); *Bretz v. Kelman*, 773 F.2d

22  1026, 1031 (9th Cir. 1985).

23  Here, the complaint sets forth insufficient facts to support O'Sullivan's claims of a

24  Fourth Amendment violation with regard to his arrest on the criminal threat charges.  O'Sullivan

25  concludes that because he was arrested and the case was dismissed, there was a constitutional

26  ////

violation. These conclusory statements are insufficient to state a claim.[12] Therefore, the claim must be dismissed. However, O'Sullivan will be granted leave to file an amended complaint if he can allege specific facts supporting a Fourth Amendment violation stemming from his arrest on the criminal threat charges and can identify the proper defendants.

Claims Seven and Eleven

The seventh and eleventh claims appear to assert *Monell* claims, as plaintiffs repeatedly refer to the policies and practices of Amador and El Dorado Counties. To state a claim against Amador or El Dorado County under § 1983, plaintiffs must allege facts to support a violation of their constitutional rights pursuant to a policy or custom of that county. *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). A plaintiff cannot therefore state a § 1983 claim against a municipal defendant unless he alleges that the municipal defendant maintained a policy or custom pertinent to the plaintiff's alleged injury and explains how such policy or custom caused his injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Rule 12(b)(6)).

Plaintiffs generally state that all the actions of all the defendants were part of a policy and practice of their respective municipalities that were unconstitutional. Rather than focus on any one claim, plaintiffs again repeat numerous allegations such as withholding exculpatory information, taking horses and malicious prosecution. These claims do not contain sufficient factual matters which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Rather, the claims are supported only by conclusory statements. The court need not accept legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Therefore, any *Monell* claim is dismissed without leave to amend.

---

[12] Plaintiff also has not identified the proper defendants for this claim.

Plaintiffs also allege a takings claim with respect to the horses that have yet to be returned.[13]  Pursuant to *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), a takings claim against a public entity is not ripe if a plaintiff has an adequate remedy under state law for obtaining just compensation and the plaintiff has not availed himself of that process.  *Id*. at 194-95.  California provides a process to seek compensation for an alleged taking through government action.  Because plaintiffs's complaint does not allege that plaintiffs attempted to seek compensation through those state post-deprivation procedures, plaintiffs' takings claim will be dismissed.  However, because plaintiffs stated during the hearing on the motions to dismiss that they had filed a tort claim in state court, plaintiffs will be given leave to amend their complaint on this claim if they can allege facts showing that they followed the requisite state post-deprivation procedures.[14]

Claim Eight

The eighth claim is a claim for replevin, a remedy by which plaintiffs seek return of the horses that are still in the possession of Amador County.  At the time of the hearing on the motions to dismiss, the restitution hearing in the state court proceedings had not yet occurred.  Thus, the state court had yet to rule on whether the horses should be returned to plaintiffs.  Thus the claim, if any, is not ripe for adjudication and should be dismissed without prejudice.

Claim Nine

Claim nine essentially asserts state law claims that are analogous to the federal claims that are barred by *Heck*.  Plaintiff seeks damages based on deceit and fraud due to the criminal prosecutions.  O'Sullivan pled no contest to the animal cruelty charges, thus barring any state law claim for relief based on that plea.  *See Yount v. City of Sacramento*, 43 Cal.4th 885, 902

---

[13] The restitution hearing to decide the return of the horses was still pending at the time of the court hearing before the undersigned.

[14] At the hearing on the motions to dismiss, the County defendants indicated that they were unaware of any such claim.

(2008), cert. denied, __ U.S. __, 129 S.Ct. 905 (2009) (principles espoused in *Heck* also apply to plaintiff's state law tort claims). Thus, claim nine should be dismissed without leave to amend as to the current defendants.

Claims Ten, Twelve to Nineteen

Plaintiffs allege numerous state law claims against all defendants, including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, conversion, defamation, abuse of process, malicious prosecution and misuse of prosecutorial discretion. Defendants argue that they are immune from these claims pursuant to Cal. Gov't Code § 821.6.

Cal. Gov't Code § 821.6 states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

Defendants are correct and they are immune from claims of malicious prosecution as they were clearly acting within the scope of their employment in prosecuting the case against plaintiffs. The non-prosecutorial defendants are also immune to the claims of negligence, emotional distress, defamation and conversion. *Poppell v. City of San Diego*, 149 F.3d 951, 970 (9th Cir. 1998) (zoning official immune from liability for infliction of emotional distress for referring alleged zoning violations to city attorney for prosecution); *Parkes v. County of San Diego*, 345 F. Supp.2d 1071, 1082 (S.D. Cal. 2004) (immunity from intentional infliction of emotional distress); *Baughman v. State of California*, 38 Cal.App.4th 182, 190-92 (1995) (immunity from liability for tort of conversion from destruction of property while executing a search with a warrant); *Jenkins v. County of Orange*, 212 Cal. App. 3d, 278, 283-85 (1989) (immunity for negligence). These claims should be dismissed without leave to amend.

Claim Twenty

Plaintiffs maintain that the County defendants owed plaintiffs a fiduciary duty and breached that fiduciary duty. FAC at 82. Plaintiffs allege that the defendants had a duty to properly discharge their responsibilities and their failure to do so caused plaintiffs damages. *Id*.

Plaintiffs do no not point to any authority that would allow them to proceed on this claim nor has the court discovered any authority. This claim is frivolous and should be dismissed.

During the court hearing, plaintiffs also characterized this claim as encompassing the defendants lying to the state court as a type of state fraud or deceit claim. If that is the true nature of this claim, the defendants would be immune pursuant to Cal. Gov't Code § 821.6. Both of plaintiffs' theories are flawed and this claim should be dismissed without leave to amend.

Claim Twenty-One

This claim generally alleges that based on the doctrine of *respondeat superior*, the defendant Counties are responsible for the conduct of their employees. No actual claim is set forth in this section and plaintiffs have generally failed to allege facts that would demonstrate any supervisor liability. This claim should be dismissed without leave to amend.

Claim Twenty-Two

Plaintiffs request that the court remove from office, defendant Todd Riebe, the elected district attorney of Amador County. FAC at 84. Plaintiffs maintain that pursuant to various provisions of the U.S. Constitution and the California Government Code, the court has the authority to undertake this endeavor.[15] *Id.* at 86. Plaintiffs' request is entirely meritless and frivolous and must be dismissed without leave to amend.

Amended Complaint/Additional Parties

Plaintiffs' complaint is dismissed for the reasons discussed above. Plaintiffs will be granted leave to file one final amended complaint in accordance with the limitations set forth herein.[16] No additional amendment will be allowed. As noted with respect to several claims

_____

[15] Plaintiffs do not identify any specific provisions.

[16] On August 19, 2009, plaintiff Clem indicated she wished to substitute for several Doe defendants, Kenneth Zimmerman and Julie Tweety and add causes of action against those defendants. Dckt. No. 42. Plaintiff may include these defendants and causes of action if she files a further amended complaint.

arising under § 1983, plaintiffs failed to allege specific facts or identify the appropriate

defendants.  The Civil Rights Act provides as follows:

> Every person who, under color of [state law] . . . subjects, or
> causes to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  *See*

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  "A

person 'subjects' another to the deprivation of a constitutional right, within the meaning of

§ 1983, if he does an affirmative act, participates in another's affirmative acts or omits to

perform an act which he is legally required to do that causes the deprivation of which complaint

is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

In an amended complaint, plaintiffs must demonstrate how the conditions complained of

have resulted in a deprivation of plaintiffs' constitutional rights.  *See Ellis v. Cassidy*, 625 F.2d

227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named

defendant is involved.  There can be no liability under § 1983 unless there is some affirmative

link or connection between a defendant's actions and the claimed deprivation.  *Rizzo*, 423 U.S.

362; *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743

(9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil

rights violations are not sufficient.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

their employees under a theory of *respondeat superior* and, therefore, when a named defendant

holds a supervisorial position, the causal link between him and the claimed constitutional

violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979);

*Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).  Vague

and conclusory allegations concerning the involvement of official personnel in civil rights

violations are not sufficient.  *See Ivey*, 673 F.2d at 268.

Rule 8 sets forth general rules for federal court pleadings. *See Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).  Complaints are required to set a forth (1) the grounds upon which the court's jurisdiction rests, (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for the relief plaintiff seeks.  Even if the factual elements of the cause of action are present, but are scattered throughout the complaint and are not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8(a)(2) is proper. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (stating that a complaint should set forth "who is being sued, for what relief, and *on what theory*, with enough detail to guide discovery" (emphasis added)).  A complaint that fails to comply with Rule 8 may be dismissed with prejudice pursuant to Rule 41(b).  Fed. R. Civ. P. 8; *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981)).  The complaint in this action illustrates the "unfair burdens" imposed by complaints, "prolix in evidentiary detail, yet without simplicity, conciseness and clarity" which "fail to perform the essential functions of a complaint."  *McHenry*, 84 F.3d at 1179-80.

Plaintiffs are informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiffs file a further amended complaint, the first amended complaint no longer serves any function in the case.  Therefore, in any further amended complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiffs file an amended complaint, it may be no longer than twenty-five pages and must be submitted within sixty days of any order adopting these findings and recommendations.  Failure to file an amended complaint will result in a recommendation that this action be dismissed.

<u>Fed. R. Civ. P. 25(a)(1)/Motion to Appoint Counsel</u>

<u>Fed. R. Civ. P. 25(a)(1)</u>

On August 19, 2009, plaintiff Clem filed a motion to appoint counsel in which she informed the court that plaintiff O'Sullivan was deceased. However, Clem has not filed a proper suggestion of death pursuant to Rule 25(a)(1), nor is there any indication that a potential nonparty successor has been served with a suggestion of death. Rule 25(a)(1) states:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

Specifically, Rule 25(a)(1) "requires two affirmative steps to trigger the running of the 90 day period." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). The first step is to formally suggest the death of the party upon the record. *Id*. The second step is to serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute. *Id*.

Within twenty-one days of any order adopting these findings and recommendations, plaintiff shall file the proper notice pursuant to Rule 25(a)(1) for a potential nonparty successor. Upon receipt of any amended complaint and a proper motion to substitute a party for O'Sullivan, the court will determine which of O'Sullivan's claims are extinguished and what claims may proceed.[17]

---

[17] At a minimum, decedent's § 1983 claim will not be extinguished. "Section 1983 does not deal expressly with the question of survivorship," *Pritchard v. Smith*, 289 F.2d 153, 155 (8th Cir. 1961), thus federal courts look to state law in determining whether section 1983 claims survive the death of a defendant, provided that state law is not inconsistent with federal law. *Id*. at 157 (citing 42 U.S.C. § 1988); *see also Robertson v. Wegmann*, 436 U.S. 584, 589 (1978) (applying state law to determine whether a section 1983 claim survived death of the plaintiff). The applicable California law, Cal. Civ. Proc. Code § 377.20(a) provides that "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period."

<u>Motion to Appoint Counsel</u>

With respect to plaintiff Clem's request for the appointment of counsel, the district court has discretion under 28 U.S.C. § 1915(e)(1) to request counsel to represent an indigent civil litigant.[18] First, however, the court must evaluate both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. *See*, *e.g.*, *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

On the record before it, the court cannot find a likelihood of success on the merits. *See Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984) (motions to appoint counsel granted only in exceptional circumstances and at discretion of trial court). Therefore, plaintiff Clem's motion for appointment of counsel is denied without prejudice.

For the foregoing reasons IT IS HEREBY RECOMMENDED that:

1. The El Dorado County defendants' motion to dismiss, Dckt. No. 15, be granted, and El Dorado County, El Dorado County District Attorney's Office, Vern Pierson and Trish Kelliher be dismissed with prejudice from this case.

2. The Amador County defendants' motion to dismiss, Dckt No. 17, be granted, and Amador County District Attorney's Office, Amador County Animal Control, Todd Riebe and Melinda Aiello be dismissed from this case with prejudice. The remaining defendants, John Vail and County of Amador, be dismissed without prejudice.

3. Plaintiffs be granted leave to amend the complaint one final time as to the claims discussed above and the additional defendants, Kenneth Zimmerman and Julie Tweety. Plaintiffs be directed that if they file an amended complaint it may be no longer than twenty-five pages and be further directed that they should not rely on exhibits to state claims and the amended complaint must be submitted within sixty days of any order adopting these recommendations. Plaintiffs further be admonished that failure to file an amended complaint

---

[18] Plaintiffs were granted leave to proceed *in forma pauperis* on May 7, 2009. Dckt. No. 38.

will result in a recommendation that this action be dismissed.

4. Within twenty-one days of any order adopting these recommendations, plaintiff Clem be required to file the proper notice pursuant to Rule 25(a)(1) for a potential nonparty successor.

5. Plaintiff Clem's motion for appointment of counsel, Dckt. No. 44, be denied without prejudice.

6. Defendant Beth Dicaprio be dismissed pursuant to Rule 4(m).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE